IN THE

# United States Court of Appeals for the Eleventh Circuit

No. 15-15558-G

---

JOHN LAGE and MARIA MANTILLA,

Plaintiffs/Appellants,

*vs.*

OCWEN LOAN SERVICING, LLC,

Defendant/Appellee.

---

*On appeal from the final judgment of the United States District Court for the Southern District of Florida dated November 19, 2015, in No. 9:14-cv-81522-BB*

---

# BRIEF FOR APPELLEE

---

**K&L GATES LLP**

David R. Fine
17 North Second St., 18th Floor
Harrisburg, PA 17101
(717) 231-4500
david.fine@klgates.com

Freddi R. Mack
Southeast Financial Center
200 South Biscayne Blvd, Suite 3900
Miami, FL  33131
(305) 539-3375
freddi.mack@klgates.com

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

**Interested Persons**

1. Bloom, Hon. Beth, U.S. Dist. Judge (S.D. Fla.)
2. Fine, David R. (Attorney for Appellee)
3. Golant, Jeffrey N. (Attorney for Appellant)
4. K&L Gates LLP (Attorneys for Appellee)
5. Jessica L. Kerr, P.A. (Attorneys for Appellant)
6. Kerr, Jessica L. (Attorney for Appellant)
7. Klosky, Chad A. (Attorney for Appellant)
8. Lage, John (Appellant)
9. Law Offices of Jeffrey N. Golant, P.A. (Attorneys for Appellant)
10. Mack, Freddi R. (Attorney for Appellee)
11. Mantilla, Maria (Appellant)
12. Ocwen Loan Servicing, LLC (Appellee)
13. Valle, Hon. Alicia O., U.S. Magistrate Judge (S.D. Fla)
14. Zanakos, Christina N. (Attorney for Appellant)

**Corporate Disclosure**

Defendant/Appellee, Ocwen Loan Servicing, LLC, is a limited liability company whose sole member is Ocwen Mortgage Servicing, Inc. Ocwen Mortgage Servicing, Inc. is wholly owned by Ocwen Financial Corporation, which is publically traded on the New York Stock Exchange.

## STATEMENT REGARDING ORAL ARGUMENT

Defendant/Appellee Ocwen Loan Servicing, LLC, requests oral argument in this case because the principal legal issue is one of first impression in the Eleventh Circuit.

# TABLE OF CONTENTS

COUNTER-STATEMENT OF ISSUES PRESENTED ............................ 1

COUNTER-STATEMENT OF THE CASE ................................................. 3

STANDARD OF REVIEW ............................................................ 10

SUMMARY OF THE ARGUMENT .......................................................... 10

ARGUMENT ............................................................................... 12

I.    The district court correctly determined that the requirements of
      the 2014 amendment to Regulation X apply only to applications
      first submitted on or after January 10, 2014 ................................. 12

      A.    The CFPB, which promulgated the amendments to
            Regulation X, understands the new requirements to apply
            only to applications first submitted on or after January 10,
            2014 ...................................................................... 13

      B.    The language of Regulation X supports the district court's
            conclusion that the new requirements apply only to
            applications submitted after January 10, 2014 .................... 17

II.   The Borrowers completed their loss-mitigation application less
      than 37 days before the rescheduled foreclosure sale and, so, they
      were not entitled to the Regulation-X procedures on which they
      rely… .............................................................................. 18

III.  RESPA requires proof of damages, and the Borrowers failed to
      point to any triable facts to support their damages claim ............ 22

IV.   The district court correctly granted summary judgment to Ocwen
      on the Borrowers' notice-of-error claim ......................................... 27

V.    The Borrowers concede that, if the Court affirms the judgment for
      Ocwen on the RESPA and Regulation X claims, it should affirm
      the judgment against them on their negligence claim ................. 27

CONCLUSION ...................................................................... 29

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Cammarano v. United States*, 358 U.S. 498 (1959) .......................... 16, 17

*Campbell v. Nationstar Mortgage and Federal National Mortgage Association*, 611 F. App'x 288 (6th Cir. 2015) .................... 16

*Galvez v. Bruce*, 552 F.3d 1238 (11th Cir. 2008) ...................................... 9

*Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp.2d 1369 (M.D. Ga. 2011) ........................................................................ 24

*Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249 (11th Cir. 2001) ............. 18

*Menashe v. Bank of NY*, 850 F. Supp.2d 1120 (D. Hawaii 2012) ..................................................................................................... 22

*Miccosukee Tribe v. United States*, 516 F.3d 1235 (11th Cir. 2008) ..................................................................................................... 26

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587 (11th Cir. 1995) ............................................................... 26

*Sierra Club v. Johnson*, 436 F.3d 1269 (11th Cir. 2006) ....................... 16

*Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046 (11th Cir. 2008) .............. 10

*Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326 (11th Cir. 2005) ................................... 23

**State Cases**

*Clay Elec. Co-op., Inc. v. Johnson*, 873 So.2d 1182 (Fla. 2003) ............. 28

**Federal Statutes**

12 U.S.C. §§ 2601, *et seq.,* Real Estate Settlement Procedures Act, ................................................................................................. *passim*

12 U.S.C. § 2605(f)(1)(B) ....................................................................... 25

**Regulations**

12 C.F.R. part 1024 .................................................................................. 5

12 C.F.R. Part 1024, Supplement I.............................................. 19

12 C.F.R. § 1024.1(b) .............................................................. 13

12 C.F.R. § 1024.1(c).......................................................... 17, 19

12 C.F.R. § 1024.31 ................................................................ 13

12 C.F.R. § 1024.35(e)(B) ......................................................... 8

12 C.F.R. § 1024.41(b) ............................................................ 14

12 C.F.R. § 1024.41(b)(2) .................................................... 15, 17

12 C.F.R. § 1024.41(b)(3)................................................ 20, 21, 22

12 C.F.R. § 1024.41(c)...................................................... 17, 18

## Federal Register

78 Fed. Reg. 10696, 10723–24. (Feb. 14, 2013) ......................... 13, 14, 19

78 Fed. Reg. 39902, 39911-12 (July 2, 2013) ......................................... 20

## Other Authorities

Federal Rule of Appellate Procedure 28(e) ....................................................... 3

"Help For Struggling Borrowers" at 12 (Jan. 28, 2014),
    available at
    http://files.consumerfinance.gov/f/201402_cfpb_mortgages
    _help-for-struggling-borrowers.pdf (last checked March
    12, 2016)......................................................................... 16

Mortgage Servicing Rules Under the Real Estate Settlement
    Act ......................................................................................... 13

iv

## COUNTER-STATEMENT OF ISSUES PRESENTED

1.     Whether this Court should affirm the district court's determination that the 2014 amendment to Regulation X[1] applies to loss-mitigation applications submitted on or after January 10, 2014, such that the requirements imposed by the amendment (and relied upon by the borrowers in this case) do not apply to a loss-mitigation application submitted on January 8, 2014, when

—the Consumer Financial Protection Bureau, the federal agency that promulgated the amendment, has explained that it applies only to loss-mitigation applications submitted on or after the effective date of the regulation, January 10, 2014; and

—the structure of the amended regulation demonstrates that it could only apply to loss-mitigation applications first submitted on or after January 10, 2014, because a contrary interpretation would render whole provisions meaningless.

2.     Whether this Court can affirm the district court's determination on the alternative bases that

—the borrowers' loss-mitigation application in this case became complete less than 37 days before the foreclosure sale such that the requirements of the amended Regulation X do not apply; and

—a RESPA (or Regulation X) plaintiff must prove damages, and the borrowers failed to do so.

---

[1]     As Appellee Ocwen Loan Servicing LLC ("Ocwen") explains more fully below, Regulation X implements certain requirements of the Real Estate Settlement Procedures Act, and Regulation X was amended effective January 10, 2014.

3.     Whether this Court should affirm the district court's determination that the borrowers failed to sustain their burden of proof on their RESPA notice-of-error claim when the borrowers failed to demonstrate that there is a triable issue of fact regarding their entitlement to damages; and

4.     Whether this Court should affirm the district court's determination that the borrowers' negligence claim, which rested on the duties imposed by Regulation X, could not survive for the same reasons the Regulation X claims could not survive—a point the borrowers concede in their opening appellate brief.

## COUNTER-STATEMENT OF THE CASE

For the most part, the facts relevant to this appeal are not in dispute. As John Lage and Maria Mantilla (collectively, the "Borrowers") assert in their opening brief, the district court's November 19, 2015, opinion (the "Opinion") accurately describes the timeline of events and the procedural history of the case. This recitation, then, will be succinct.

## Factual Background[2]

On July 11, 2006, the Borrowers obtained a loan for $786,700 from Greenpoint Mortgage Funding, Inc., and the loan was secured by a mortgage on the Borrowers' property in Boynton Beach, Florida. *See* Opinion, App. Vol. IV [Doc. 82 - Pg. 3]. The Borrowers fell behind in their loan payments in 2009 and, on October 23, 2009, the then-loan servicer filed a foreclosure complaint. *Id.* Ocwen became the servicer of the Borrowers' loan in February 2013. *Id.* Eight months later, on October 1, 2013, the state court entered a final judgment of foreclosure against the Borrowers, and Ocwen scheduled a foreclosure sale for January 29, 2014. *Id.*

---

[2]     Pursuant to Rule 28(e) of the Federal Rules of Appellate Procedure, all references to the parts of the record contained in the appendix filed with the Appellants' brief (the "Appendix") are to the Appendix. Such references are made by the designation "App. Vol. __ [Doc. ___ - Pg. ___]" and shall cite to the appropriate volume of the Appendix, followed in brackets by the document number of the cited paper on the district court docket and the page number within the document. *See* 11th Cir. R. 28-5.

Three months later—and just three weeks before the scheduled foreclosure sale—the Borrowers on January 8, 2014, faxed to Ocwen an incomplete loss-mitigation application. *Id.* The next day, Ocwen acknowledged its receipt of the application. *Id.* A day later, Ocwen notified the Borrowers that they needed to provide additional paystubs. *Id.* Ocwen and the Borrowers continued to communicate, and they eventually participated in a January 24, 2014, mediation at which the Borrowers agreed to provide further documentation to support their loan-modification request. *Id.* at Pg. 9. On January 28, 2014, Ocwen rescheduled the foreclosure sale from the next day until March 14, 2014. *Id.*

Throughout the following month, Ocwen repeatedly told the Borrowers that their application was incomplete. *Id.* At the beginning of March 2014, the Borrowers provided additional materials so that their application was complete on or about March 7, 2014. *Id.* at Pg. 5. By notice dated March 9, 2014, Ocwen informed the Borrowers that their loan-modification request had been denied because there was a confirmed foreclosure sale within seven days. *Id.*

The Borrowers sought to cancel the March 14, 2014, foreclosure sale, but it went forward. *Id.*[3]

Nearly six months later, on September 4, 2014, while they continued to live in the home, the Borrowers sent to Ocwen a "Qualified Written Request/Notice of Error." *Id.* at Pg. 6. In that document, the

---

[3]    Ocwen had the legal right to go forward with the foreclosure sale, and the Borrowers do not suggest otherwise in their opening appellate brief.

Borrowers asserted that they were invoking the "error resolution procedures established by RESPA and Regulation X" and claiming that Ocwen failed to review their loss-mitigation application within the regulatory timeline "and then relied on its own failure as the sole basis to deny [the] application. *Id.*

Ocwen acknowledged its receipt of the notice of error the following week and, after extending the response time as the regulation permits, Ocwen responded to the notice of error on October 14, 2014. *Id.* In its response, Ocwen restated its understanding of the Borrowers' suggestion of error, described the factors that determine whether Ocwen will agree to a loan modification and then referred the Borrowers to Ocwen's March 9, 2014, denial letter. App. Vol. III [Doc. 49-10 - Pg. 9].[4]

## **Procedural Background**

The Borrowers commenced this lawsuit by filing a complaint in the United States District Court for the Southern District of Florida on December 8, 2014 (the "Complaint"). App. Vol. I [Doc. 1 - Pg. 1]. The Borrowers asserted two claims.

First, they alleged that Ocwen violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, and its implementing regulations, known as "Regulation X," 12 C.F.R. part 1024. Regulation X, as amended effective January 10, 2014, imposed a series of requirements on mortgage servicers that receive loss-

---

[4]    The Ocwen response to the notice of error inadvertently referred to the date of the denial notice as March 10, 2014.

mitigation applications from borrowers who are in default. The Borrowers alleged that Ocwen did not meet its Regulation X obligations with respect to the loss-mitigation application they submitted on January 8, 2014. The Borrowers further claimed that Ocwen violated RESPA regulations by not properly responding to their notice of error.[5] In their RESPA claim, the Borrowers sought actual and statutory damages and counsel fees. App. Vol. I [Doc. 1 - Pg. 8–9].

Second, the Borrowers asserted a claim for negligence based on the same alleged RESPA violations set out in the first count of the complaint. *Id.* at Pg. 9–10. In their negligence claim, the Borrowers sought both compensatory and punitive damages. *See id.* at Pg. 11.

The parties engaged in early dispositive-motion practice and discovery and, on September 4, 2015, Ocwen filed a motion for summary judgment. App. Vol. IV [Doc. 50 - Pg. 1]. After full briefing and oral argument, the district court granted Ocwen's motion in its entirety by order dated November 19, 2015, and the district court entered a formal judgment the next day. App. Vol. IV [Doc. 82 - Pg. 1]; App. Vol. IV [Doc. 83 - Pg. 1].

---

[5]    Notably, in their Complaint, the Borrowers alleged that Ocwen never "substantively" responded to their notice of error and that, "[a]t no point in time did [Ocwen] ever acknowledge Borrowers' loss mitigation application or request any additional documentation or information in support of Borrowers' loss mitigation application." *See* App. Vol. I [Doc. 1 - Pg. 6]. As the portions of the district court's opinion cited above demonstrate, those allegations were false, a fact the Borrowers must have known since they were themselves the recipients of the relevant communications from Ocwen.

## The District Court's Opinion

The district court's November 19, 2015, order resolved two motions—Ocwen's motion for summary judgment and the Borrowers' motion to strike a submission Ocwen made with its reply brief in support of its motion for summary judgment. The district court denied the motion to strike and, because the Borrowers do not challenge that decision on appeal, Ocwen will not address that filing further.

In its order granting summary judgment (the "Opinion"), the district court first considered the Borrowers' RESPA claims. It explained that it confronted a threshold question: because many of the Borrowers' RESPA claims were premised on requirements added to Regulation X effective January 10, 2014, do those requirements even apply to the Borrowers' January 8, 2014, submission? If not, the district court determined, the Borrowers would have failed to state a cognizable RESPA/Regulation-X claim.

The Borrowers argued that the additional Regulation-X requirements apply only to "complete" or "facially complete" loss-mitigation applications. Although they submitted their application to Ocwen before January 10, 2014, the Borrowers argued nonetheless that the new requirements applied to their application because their application only became complete or "facially complete" sometime later.

The district court reviewed the language and structure of Regulation X as well as the CFPB's interpretative guidance documents and rejected the Borrowers' argument. The court concluded that all of those factors indicated that the new requirements apply only to

7

applications first submitted on or after January 10, 2014, regardless of when they became complete. Opinion, App. Vol. IV [Doc. 82 - Pg. 16]. The district court noted that the CFPB explained in several publications that the new requirements would apply only when applications were first submitted on or after January 10, 2014. *Id.* at Pg. 18–20. The court also considered the structure of Regulation X and explained that, since it requires servicers to take certain steps after an application is received but potentially before it is complete, it would make no sense to read the regulation as applying only after the application is complete (or "facially" so). *See id.* at Pg. 19–21. Having determined that the new requirements applied only if the application was submitted on or after January 10, 2014, the district court granted summary judgment in Ocwen's favor on the Borrowers' initial claim because there is no dispute that they submitted their application *before* that date. *Id.* at Pg. 23.

The district court then considered the Borrowers' claim that Ocwen failed to comply with Regulation X's notice-of-error requirements. The Borrowers argued that Ocwen's response to their notice of error was insufficient such that they were entitled to actual and statutory damages.

The district judge held that Ocwen's response did not meet the requirements of 12 C.F.R. § 1024.35(e)(B). *Id.* at Pg. 25–28. However, the district court granted summary judgment in Ocwen's favor on that claim because the Borrowers failed to sustain their burden of proving damages. *Id.* at Pg. 31–38.

8

The district court first held that the Borrowers were not entitled to statutory damages because they offered no evidence that Ocwen engaged in a "pattern or practice of noncompliance," which is a requirement for an award of statutory damages. *Id.* at Pg. 32 (citing 12 U.S.C. § 2605(f)(1)(B)).

The district court also concluded that the Borrowers failed to sustain their burden of proving actual damages. Opinion, App. Vol. IV at Pg. 32–38.

Because proof of an entitlement to statutory or actual damages is a requirement of a RESPA claim, the district court then granted summary judgment on the notice-of-error issue in Ocwen's favor. *Id.* at Pg. 38.

The district court finally considered the Borrowers' negligence claim. Because that claim rested on Ocwen's alleged breach of duties under RESPA and Regulation X, the court concluded that its earlier holdings mandated summary judgment in Ocwen's favor on the negligence claim. *Id.* at Pg. 38–39.

Having resolved all claims by summary judgment, the district court entered judgment for Ocwen on November 18, 2015. App. Vol. IV [Doc. 83 - Pg. 1].

The Borrowers filed their notice of appeal on December 14, 2015. App. Vol. IV [Doc. 85 - Pg. 1].

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *See Galvez v. Bruce,* 552 F.3d 1238, 1241 (11th Cir. 2008). Summary judgment is appropriate where the record presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Swisher Int'l, Inc. v. Schafer,* 550 F.3d 1046, 1050 (11th Cir. 2008).

## SUMMARY OF THE ARGUMENT

The Borrowers made three claims in their complaint. The district court properly granted summary judgment for Ocwen on each.

First, the Borrowers argued in Count I that Ocwen violated the Real Estate Settlement Procedures Act ("RESPA") and its implementing regulation, Regulation X, in two ways. The Borrowers contended that Ocwen violated Regulation X by not responding to their loss-mitigation application within 30 days. The district correct correctly rejected this claim because the 30-day deadline was implemented by a 2014 amendment to Regulation X, and the requirements imposed by the 2014 amendment apply only to loss-mitigation applications first submitted on or after the January 10, 2014, effective date. The Borrowers submitted their application on January 8, 2014.

There are additional and alternative bases to affirm the district court's rejection of this first RESPA/Regulation X claim. First, the regulation itself explains that its requirements do not apply when the

loss-mitigation application becomes complete fewer than 37 days before a scheduled foreclosure sale. The Borrowers did not meet this timing requirement. In addition, RESPA requires a borrower seeking to maintain a legal claim to prove damages. While the district court did not make any findings as to damages flowing from this alleged first RESPA/Regulation X violation, the Borrowers on appeal have abandoned their actual-damages claim, and the record plainly supports the district court's rejection of the Borrowers' statutory-damages claim.

Second, the Borrowers asserted in Count I that Ocwen violated RESPA and Regulation X with respect to its response to the Borrowers' notice of error. The district court correctly rejected this claim as well because, as noted above, a RESPA/Regulation-X claim may only proceed when the borrower can prove damages. The district court's opinion expressly found no actual damages flowing from the alleged notice-of-error violation, and as noted above, no claim for statutory damages.

Finally, in Count II, the Borrowers asserted a claim for negligence. The Borrowers concede in their opening brief in this Court that their negligence claim—which points only to the statutory and regulatory duties imposed by RESPA and Regulation X—rises and falls on the success of the Borrowers' RESPA/Regulation-X claims. Because the district court correctly rejected those claims, it also correctly rejected the negligence claim that relied on them.

This Court should affirm.

11

## ARGUMENT

The Borrowers' complaint included two counts. The first count had two parts and alleged violations of RESPA and Regulation X because Ocwen purportedly failed to consider the Borrowers' loss-mitigation application within 30 days as required by the 2014 amendment to Regulation X and because Ocwen purportedly failed to respond properly to the Borrowers' notice of error. The second count alleged negligence based on Ocwen's alleged failure to comply with RESPA (*i.e.,* the second count alleged a tort claim based on the same rights and duties asserted in the first count).

The district court correctly rejected both counts of the Borrowers' complaint.

## I. The district court correctly determined that the requirements of the 2014 amendment to Regulation X apply only to applications first submitted on or after January 10, 2014.

The district court held that the Regulation X requirements on which the Borrowers based their principal RESPA claim do not apply to their loss-mitigation application because it was submitted to Ocwen *before* the effective date of the amendment that added those requirements. Opinion, App. Vol. IV [Doc. 82 - Pg. 18]. The Borrowers argue on appeal that the 2014 amendment applies to a loss-mitigation application that became complete or "facially complete" after the effective date of the amendment regardless of when the application was first submitted. Appellants' Op. Br. at 12–18.

The district court was correct, and the Borrowers are wrong.

**A.    The CFPB, which promulgated the amendments to Regulation X, understands the new requirements to apply only to applications first submitted on or after January 10, 2014.**

The Consumer Financial Protection Bureau ("CFPB"), the agency that promulgated the amendment to Regulation X and that has primary responsibility for enforcing the regulation, has explained that the new requirements (including the time limit on which the Borrowers base their principal RESPA claim) apply only to loss-mitigation applications first submitted to servicers on or after January 10, 2014. When it published the final regulatory amendment in the Federal Register in October 2013, the CFPB explicitly explained that "the new regulations would apply to transactions for which applications were received on or after January 10, 2014." Opinion, App. Vol. IV [Doc. 82 - Pg. 18] (quoting 78 Fed. Reg. 60382-01 (Oct. 1, 2013)).

The CFPB did not choose that language haphazardly. The agency has made clear that it regards as important the difference between an "application" and a "completed application." Section 1024.31 of Regulation X provides definitions and sets forth that "[l]oss mitigation application means an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option." 12 C.F.R. § 1024.31. The CFPB chose that definition carefully.

> The Bureau believes that a loss mitigation application differentiates a communication or inquiry from a borrower regarding loss mitigation options from a borrower's request for consideration for a loss mitigation option. When a borrower, orally or [in] writing, expresses an interest in a loss mitigation option and provides any information that would evaluated by a servicer, that communication should be

13

considered a loss mitigation application. A servicer must then determine whether the loss mitigation application is complete or incomplete pursuant to the requirements of § 1024.41(b).

Mortgage Servicing Rules Under the Real Estate Settlement Act (Regulation X) Final Rule, 78 Fed. Reg. 10696, 10723–24. (Feb. 14, 2013) (the "2014 Amendments Final Rule").

Section 1024.1(b), in turn, defines "complete loss mitigation application": "A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b). Thus, when the CFPB announced that the new requirements included in the 2014 amendment to Regulation X would apply to "transactions for which applications were received on or after January 10, 2014," it plainly meant that the new requirements would apply only when the *initial* application was received on or after that effective date. If the agency had meant to say that the amended requirements would apply only when the *completed* application was submitted on or after January 10, 2014—as the Borrowers contend—the agency in the 2014 Amendments Final Rule would have referred not to "applications" but to "*completed* applications."

The district court correctly determined that, "[b]y imposing an effective date of January 10, 2014, the CFPB intended to institute a clear starting point with respect to when a servicer's obligations under Regulation X would be triggered." Opinion, App. Vol. IV [Doc. 82 - Pg. 19]. The agency (and the district court in this case) recognized that the

14

sort of retroactive application the Borrowers argue for here would create an unmanageable situation for lenders and servicers. Under the correct interpretation, lenders and servicers would clearly know to which applications the 2014 Regulation-X requirements apply: if an application was received on or after that date, the requirements apply. To read the regulation as the Borrowers urge would impose on lenders and borrowers some sort of ongoing duty to monitor applications for completeness even when, by the Borrowers' reasoning, those applications might first have been submitted days, weeks or months before the effective date of the amendments such that the requirements of Section 1024.41(b)(2) (related to assessing applications upon submission to determine if they are complete and, if not, notifying the borrowers of what they still must submit) could not logically apply. *Id.* at Pg. 20–21.

In examining a similar question, the Sixth Circuit described the context in which the CFPB chose the effective date for the 2014 Regulation-X amendments:

> The CFPB also found that the January 10, 2014 effective date brought the amended Regulation X's effective date in line with the effective dates of other regulations that the CFPB issued to implement provisions of the Dodd-Frank Act. The CFPB issued these regulations, referred to collectively as the Title XIV Final Rules, over a span of ten days in January 2013. Amendments to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 60382-01, 60384 (October 1, 2013) … For many of these Title XIV Final Rules, the CFPB specified that "the new regulations would apply to transactions for which applications were received on or after January 10, 2014,"

15

expressly disclaiming any retroactive application of the rules. *Id.* at 60385 (emphasis added). Despite the different issuance dates, the CFPB instead decided to establish a consistent effective date of January 10, 2014, believing that doing so would facilitate compliance. *Id.* When the CFPB issued the new Mortgage Servicing Rules in February, it expressly stated that the January 10, 2014 effective date allowed the CFPB to adopt "a coordinated approach to facilitate implementation" of both the Mortgage Servicing Rules and the Title XIV Final Rules. Mortgage Servicing Rules, 78 Fed. Reg. at 10842. It makes sense, therefore, that if the CFPB believed that it could facilitate implementation by setting the same effective date for both the Mortgage Servicing Rules and the Title XIV Final Rules, it also would choose to align the two sets of rules with respect to prospective application so that the subjects of the new regulation knew a date certain by when all new CFPB regulations went into effect.

*Campbell v. Nationstar Mortgage and Federal National Mortgage Association,* 611 F. App'x 288, 297–98 (6th Cir. 2015).

The CFPB's intention and interpretation warrants deference. *See Sierra Club v. Johnson*, 436 F.3d 1269, 1274 (11th Cir. 2006) ("An agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulation.") (quotation omitted).[6] This Court therefore should defer to the CFPB's intention for the initial submission date—not the date of completeness or facial completeness—to be the yardstick from which applicability of the 2014 Regulation X amendment is measured.

---

[6] Moreover, in a publication issued in January 2014, the CFPB told borrowers that "[t]he loss mitigation application rules only apply to loss mitigation applications submitted on or after January 10, 2014." "Help For Struggling Borrowers" at 12 (Jan. 28, 2014), available at http://files.consumerfinance.gov/f/201402_cfpb_mortgages_help-for-struggling-borrowers.pdf (last checked March 12, 2016). As the district court held, while the publication is not binding, it is persuasive.

### B.  The language of Regulation X supports the district court's conclusion that the new requirements apply only to applications submitted after January 10, 2014.

In addition to the CFPB's interpretation, the structure of Regulation X supports the district court's interpretation.[7]

As the district court correctly explained, Regulation X sets forth a series of servicer obligations that follow the chronology of the application process. Section 1024.41(b)(2)(B) requires the servicer to review a timely application and, within five days, acknowledge receipt of the application and notify the borrower if there are any documents required to complete the application. 12 C.F.R. § 1024.41(b)(2)(B).[8] Section 1024.41(c) imposes requirements on the servicer once the borrower's application is complete. 12 C.F.R. § 1024.1(c). If the Borrowers were correct in their argument that Section 1024.1's requirements begin when a borrower submits a *complete* application, Section 1024.41(b)(2)(B)—which imposes obligations on the servicer between the time the loss-mitigation application is first submitted and the time it is complete—would be rendered surplusage. Regulations, like statutes, must be interpreted to avoid rendering any provision surplusage. *See Cammarano,* 358 U.S. at 505.

---

[7]     The Borrowers question whether the district court properly relied on statutory-construction principles to interpret Regulation X. *See* Appellants' Op. Br. at 13. In fact, courts routinely and logically interpret regulations according to well-established rules of statutory construction. *See, e.g., Cammarano v. United States,* 358 U.S. 498, 505 (1959).

[8]     In the text above, Ocwen refers to a "timely" application because, as discussed more fully in Section II of this brief, the applicability of many of Regulation X's requirements depends on the timing of the application in relation to any scheduled foreclosure sale.

The district court correctly concluded that the requirements of amended Regulation X apply only to loss-mitigation applications first submitted on or after the January 10, 2014, effective date. The Borrowers' application undisputedly was submitted before that date.

## II. The Borrowers completed their loss-mitigation application less than 37 days before the rescheduled foreclosure sale and, so, they were not entitled to the Regulation-X procedures on which they rely.

The district court correctly determined that the regulatory requirements on which the Borrowers based their principal claim do not apply to their loss-mitigation application because it was submitted before the January 10, 2014, effective date of the 2014 amendment to Regulation X. There is an additional, independent basis on which this Court can affirm the district court's entry of judgment in Ocwen's favor on the Regulation-X claim. *See Lucas v. W. W. Grainger, Inc.,* 257 F.3d 1249, 1256 (11th Cir. 2001) (appellate court can affirm summary judgment on alternative bases supported by the record).[9]

Regardless of whether the effective date is triggered by all submitted applications or only complete (or "facially complete") applications, the Borrowers' claim is nonetheless flawed.

Section 1024.41(c) of Regulation X, provides that

> [i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation

---

[9]    As noted below, in its summary judgment motion, Ocwen made the argument set out in this section. Because it decided the matter on a different basis, the district court did not need to address this issue. *See* Opinion, App. Vol. IV [Doc. 82 - Pg. 23 & n.13].

> application, a servicer shall … [e]valuate the borrower for all loss mitigation options available to the borrower; and … [p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower…

12 C.F.R. § 1024.41(c). In its February 2013 summary of the proposal that became the 2014 amendment to Regulation X, the CFPB explained that "[n]one of the loss mitigation procedures apply to a loss mitigation application, including a complete loss mitigation application, received 37 days or less before a foreclosure sale." 2014 Amendments Final Rule, 78 Fed. Reg. at 10821; *see also* 12 C.F.R. Part 1024, Supplement I (Official Bureau Interpretation) (same). Available at https://www.gpo.gov/fdsys/pkg/CFR-2014-title12-vol8/pdf/CFR-2014-title12-vol8-part1024-appI.pdf (last checked March 23, 2016).

In its summary judgment motion, Ocwen asserted that the new requirements of Regulation X did not apply to the Borrowers' January 8, 2014, loss-mitigation application because there was a foreclosure sale scheduled for 21 days later—*i.e.,* less than 37 days. App. Vol. IV [Doc. 50 - Pg. 7]. The Borrowers responded by pointing out that the foreclosure sale was rescheduled from January 29, 2014, to March 14, 2014. They then suggested that the effect of the rescheduling on the 37-day requirement was an issue of first impression, and that the 37 days should be measured from the rescheduled foreclosure sale. They were wrong, both about the legal conclusion and about its being novel.

In fact, the CFPB considered and resolved that question in a way contrary to the result the Borrowers urged in the district court.

The 37-day limitation is measured by the time between the servicer's receipt of "a complete loss mitigation application" and a

19

scheduled foreclosure sale. *See* 12 C.F.R. § 1024.1(c) ("If a servicer receives a *complete* loss mitigation application more than 37 days before a foreclosure sale …") (emphasis added).

The Borrowers suggested to the district court that there is some uncertainty about the application of these regulations when the foreclosure sale is rescheduled. To the contrary, the CFPB has been clear about the subject. In comments published before the effective date of the 2014 Regulation X amendment, the CFPB explained as follows:

> [T]he provisions of § 1024.41 do not expressly address situations in which a foreclosure sale is rescheduled, or has not yet been scheduled at the time a complete loss mitigation application is received. Since issuance of the final rule, the Bureau has received questions about the applicability of the timing provisions in such scenarios.
>
> ***
>
> The Bureau believes guidance in such situations is appropriate, and is proposing in § 1024.41(b)(3) to provide that, for purposes of § 1024.41, timelines based on the proximity of a foreclosure sale to the receipt of a complete loss mitigation application will be determined as of the date a complete loss mitigation application is received.… *Proposed comment 41(b)(3)–2 would clarify that such timelines would remain in effect even if at a later date, a foreclosure sale was rescheduled.*

78 Fed. Reg. 39902, 39911-12 (July 2, 2013) (emphasis added); *see also* 12 C.F.R. § 1024.41(b)(3) ("To the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs, *such determination shall be made as of the date a complete loss mitigation application is received*.") (emphasis added).

In this case, there is no dispute that the Borrowers submitted an incomplete loss-mitigation application on January 8, 2014, and that there was a foreclosure sale already scheduled for January 29, 2014. Opinion, App. Vol. IV [Doc. 82 - Pg. 3].

In their statement of material facts opposing Ocwen's motion for summary judgment, the Borrowers took the position that "[a]t a minimum, therefore, Plaintiffs' application was 'facially complete' no later than January 27th, 2014." App. Vol. IV [Doc. 53 - Pg. 10]. Ocwen took the position that the Borrowers' application was not complete until March 7, 2014. Opinion, App. Vol. IV [Doc. 82 - Pg. 5].

The parties' disagreement about the date on which the Borrower's application became complete is immaterial because, regardless of which date is used, the Borrowers' loss-mitigation application was untimely.

Assume first that the Borrowers were correct that their application became "facially complete" no later than January 27, 2014. Under 12 C.F.R. § 1024.41(b)(3), the question is whether, measured from that date, there was a foreclosure sale scheduled fewer than 37 days later. It is undisputed that, as of January 27, 2014, there was a foreclosure sale scheduled just two days later (the state court did not reschedule the foreclosure sale from January 29, 2014, to March 14, 2014, until January 28, 2014). *Id.* at Pg. 4. Thus, even if the Borrowers were right about the date on which their loss-mitigation application became "facially complete," the regulatory requirements on which they base their primary RESPA claim would not apply.

21

Assume then that Ocwen was correct that the Borrowers' application did not become complete (facially or otherwise) until March 7, 2014. Again, under Section 1024.41(b)(3), the question would be whether there was a foreclosure sale scheduled fewer than 37 days later. As of March 7, 2014, the foreclosure sale had been rescheduled for March 14, 2014, just seven days later. *Id.*

Accordingly, by either measure, the Borrowers' application was untimely, and there is an alternative basis to affirm the district court's summary judgment on their initial claim.

## III. RESPA requires proof of damages, and the Borrowers failed to point to any triable facts to support their damages claim.

There is a second alternative basis for affirmance.

As the district court held, proof of damages is a required element of a RESPA claim. *See id.* at 157; s*ee also Menashe v. Bank of NY,* 850 F. Supp.2d 1120, 1134 (D. Hawaii 2012) (citing 12 U.S.C. § 2605(f)(1) and various cases for the proposition that "damages are a necessary element of a RESPA claim …"). There are two types of potential RESPA damages: actual damages and statutory damages.

In their complaint and their opposition to Ocwen's summary judgment motion, the Borrowers alleged that they suffered actual damages and that they were entitled to statutory damages. In granting summary judgment to Ocwen, the district court held that the Borrowers had failed to meet their summary judgment burden to proceed with those claims.

In their opening brief on appeal, the Borrowers argue only about the correctness of the district court's decision about statutory damages and, so, they have waived any challenge to the actual-damages determination.[10] *See Transamerica Leasing, Inc. v. Institute of London Underwriters,* 430 F.3d 1326, 1331 n.4 (11th Cir. 2005) (issues not briefed on appeal are waived).

Ocwen recognizes that the district court's determination regarding actual damages was focused on the notice-of-error claim since the court had already rejected the Borrowers' first RESPA-Regulation-X claim for other another reason. Ocwen also recognizes that the district court, in *dictum,* suggested that Appellant Maria Mantilla's deposition testimony indicated that "Plaintiffs' emotional suffering was clearly exacerbated by the uncertainty surrounding their loan modification application and Ocwen's allegedly unnecessary delay." Opinion, App. Vol. IV [Doc. 82 - Pg. 36].

The district court's *dictum* is ultimately unhelpful to the Borrowers, however. In its summary-judgment motion, Ocwen argued that all of the Borrowers' RESPA claims should be rejected for lack of damages. *See* App. Vol. IV [Doc. 50 - Pg. 12]. In their response to Ocwen's summary-judgment motion, the Borrowers only generally alleged that there was evidence of emotional distress, but they included no record citations. *See* App. Vol. IV [Doc. 54 - Pg. 8]. The district court nonetheless reviewed Ms. Mantilla's deposition transcript on its own

---

[10]    The Court will note that the Borrowers do not include the actual-damages determination in their statement of the issues or in the argument section of their brief.

23

and, in the Opinion, cited four snippets of testimony. *See* Opinion, App. Vol. IV [Doc. 82 - Pg. 35–36]. If Ocwen had been provided an opportunity to address the deposition references, it would have explained that the testimony is inadequate to forestall summary judgment.

As the district court correctly held, the law about emotional-distress damages arising from RESPA claims is clear: there must be evidence not only of demonstrable emotional distress but also of "a causal link between the claimed damages and [the] [d]efendant's alleged RESPA violation." Opinion, App. Vol. IV [Doc. 82 - Pg. 33] (quoting *Jackson v. Ocwen Loan Servicing, LLC.,* No. 11-60560, 2012 WL 882493 at *2 (S.D. Fla. March 14, 2012)); *see also Jenkins v. BAC Home Loan Servicing, LP,* 822 F. Supp.2d 1369, 1376 (M.D. Ga. 2011) (citing *McLean v. GMAC Mortg. Corp.,* 398 F. App'x 467, 471 (11th Cir. 2010) (to recover damages, the borrower has the responsibility to present "specific evidence to establish a causal link between the financing institution's violation and their injuries.").

Ms. Mantilla's testimony describes generalized stress and frustration from the foreclosure itself and the gathering and submission of documentation to support the loss-mitigation application. *See* Opinion, App. Vol. IV [Doc. 82 - Pg. 35–36] (quoting transcript). But RESPA and Regulation X plainly allow a servicer to seek foreclosure, to set a date for a foreclosure sale and to require documentation in response to a loss-mitigation application. The Borrowers' principal RESPA/Regulation-X claim is that Ocwen (allegedly) did not respond to

their loss-mitigation application within 30 days of when it became complete. To recover emotional-distress damages for that alleged violation, the Borrowers would have to prove "a causal link" between the violation and any emotional distress.[11] The Borrowers made no effort to do so.[12]

On appeal, the Borrowers challenge the district court's rejection of their statutory-damages claim. RESPA allows statutory damages when a plaintiff proves that a servicer has engaged in "a pattern or practice" of noncompliance with the requirements of the statute. *See* 12 U.S.C. § 2605(f)(1)(B). In its summary judgment motion, Ocwen set out the legal standard and then pointed to the lack of evidence in the record to create a jury question about there being "a pattern or practice." App. Vol. IV [Doc. 50 - Pg. 14]. In their brief opposing summary judgment, the Borrowers made only the following cursory response:

> Plaintiffs have also alleged that the RESPA violations in this case are the consequence of the fact that Ocwen maintains inadequate procedures to comply with RESPA. Ocwen challenges these allegations by improperly insisting that Plaintiffs' *[sic]* have failed to prove them. (D.E. 50, p. 14).

---

[11]    As the district court noted in Footnote 21 of the Opinion, the Borrowers also suggested they incurred counsel fees "to help [them] avoid the completion of the foreclosure process while [their] loan modification application was pending." Opinion, App. Vol. IV [Doc. 82 - Pg. 37 n.21]. Those fees cannot be actual damages for any RESPA/Regulation-X violation since, by the Borrowers' admission, they related to an effort to forestall foreclosure rather than to any delay in Ocwen's consideration of their loss-mitigation application.

[12]    Put another way, even if this Court credits Ms. Mantilla's testimony that the foreclose and loss-mitigation process caused her emotional distress, it should ask whether there is any evidence that the emotional distress would not have occurred but for the timing of Ocwen's consideration of the application. There is no such evidence.

> But once again, Ocwen's effort at burden shifting fails. Ocwen doesn't even attempt to demonstrate that there are no material issues of fact concerning the sufficiency of its procedures. The summary judgment burden is on Ocwen, not Plaintiffs. Having chosen once again to rely on burden shifting rhetoric, Ocwen neglects to offer any legally sufficient evidence as to why it could be entitled to summary judgment concerning the issue of pattern or practice and statutory damages.

App. Vol. IV [Doc. 54 - Pg. 11]. In other words, although the Borrowers—as the party asserting the existence of a pattern or practice of noncompliance with RESPA—would bear the burden of proof at trial, they made no effort to point to *any* evidence in response to Ocwen's summary-judgment motion.[13] Of course, to defeat summary judgment, a party that bears the burden of proof must offer some evidence from which a jury could find in that party's favor. *See Miccosukee Tribe v. United States,* 516 F.3d 1235, 1243 (11th Cir. 2008). The Borrowers ignored their burden, and the district court correctly held that Ocwen was entitled to summary judgment on the Borrowers' claim for statutory damages.

---

[13]    As the district court noted in the Opinion, the *only* other reference the Borrowers made to a pattern or practice was the allegation in the complaint that the New York Department of Financial Services and the CFPB had taken some action against Ocwen. *See* Opinion, App. Vol. IV [Doc. 82 - Pg. 32]. As the district court properly concluded, the Borrowers "fail[ed] to provide the Court with even the most minimal information concerning this regulatory action, aside from Ocwen being the target." *Id.* The district court could have gone further. Not only did the Borrowers not explain their allegation more fully in the complaint, but they *never* offered actual evidence of such an investigation or of its results and never referred to it in their opposition to summary judgment. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Incomplete allegations in a pleading never mentioned in opposition to summary judgment or supported by evidence are plainly inadequate.

The Borrowers' failure to create a jury question regarding their potential entitlement to damages provides an alternative basis for this Court to affirm the district court's rejection of the Borrowers' RESPA/Regulation X claim.

## IV. The district court correctly granted summary judgment to Ocwen on the Borrowers' notice-of-error claim.

In their complaint, the Borrowers alleged that Ocwen failed to respond properly to their "notice of error." In granting summary judgment to Ocwen on this claim, the district court relied on the Borrowers' failure to offer sufficient evidence of damages. For the reasons described in Section III, above, the district court was correct, and this Court should affirm.[14]

## V. The Borrowers concede that, if the Court affirms the judgment for Ocwen on the RESPA and Regulation X claims, it should affirm the judgment against them on their negligence claim.

In their opening appellate brief, the Borrowers concede as they must that, because their negligence claim rests on the duties asserted in their RESPA and Regulation X claims, this Court should affirm the judgment in Ocwen's favor on the negligence claim if it affirms the judgment in Ocwen's favor on the RESPA and Regulation X claims. *See* Appellants' Op. Br. at 21–22. For the reasons set out above, the district court was correct to reject the RESPA and Regulation X claims and, so,

---

[14]    Ocwen does not concede that its response to the notice of error was inadequate. It simply chooses to defend the district court's result based on that court's rationale.

this Court should affirm the district court's rejection of the negligence claim.

There is an additional and alternative basis to affirm the summary judgment against the Borrowers' negligence claim. Under Florida law, there are four elements a plaintiff must prove to make out a negligence claim: (1) a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure on the defendant's part to conform to the standard required, *i.e.,* a breach of the duty; (3) a reasonably close causal connection between the conduct and the resulting injury (proximate cause and cause in fact); and (4) *actual loss or damage. See Clay Elec. Co-op., Inc. v. Johnson,* 873 So. 2d 1182, 1185 (Fla. 2003) (emphasis added).

For all the reasons set out above, the Borrowers failed to sustain their burden to prevent summary judgment on damages, and that failure (and waiver on appeal) provides an additional basis for this Court to affirm the district court's summary judgment in Ocwen's favor on the Borrowers' negligence claim.

## **CONCLUSION**

For these reasons, Ocwen Loan Servicing, LLC, respectfully requests that this Court affirm the judgment of the district court.

March 23, 2016                    **K&L GATES LLP**

/s/ David R. Fine
David R. Fine
17 North Second St., 18th Floor
Harrisburg, PA 17101
(717) 231-4500
david.fine@klgates.com

Freddi R. Mack
Southeast Financial Center
200 South Biscayne Blvd., Suite 3900
Miami, FL 33131
(305) 539-3375
freddi.mack@klgates.com

## **CERTIFICATE OF COMPLIANCE**

I certify that the attached brief complies with the typestyle and word limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) in that the brief includes 7,095 words (excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii)). This brief has been prepared using 14-point Century Schoolbook.


/s/ David R. Fine

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on March 23, 2016, I served two copies of the attached brief on the following by U.S. Mail, postage prepaid:

Jeffrey N. Golant, Esq.
THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.
1999 N. University Drive, Suite 213
Coral Springs, FL  33071

Jessica Lynn Kerr, Esq.
JESSICA L. KERR, P.A.
4000 Hollywood Blvd., Suite 435-South
Hollywood, FL  33021


/s/ David R. Fine