IN THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

NO. 15-15558-GG

John Lage and Maria Mantilla,

Plaintiffs/Appellants,

v.

Ocwen Loan Servicing LLC,

Defendant/Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
_____

APPELLANTS JOHN LAGE AND MARIA MANTILLA'S REPLY BRIEF

Jeffrey N. Golant ESQ.
The Law Offices of Jeffrey N. Golant, P.A.
1999 N. University Drive. Ste. 213
Coral Springs, FL. 33071
Phone: (954) 942-5270
Fax: (954) 942-5272
Email: Jgolant@jeffreygolantlaw.com

*Counsel for Plaintiffs/Appellants*
*John Lage and Maria Mantilla*

# AMENDED CERTIFICATE OF INTERESTED PERSONS

USCA Case No.: 15-15558-GG

United States District Court, Southern District of Florida
Case No. 9:14-cv-81522-BB

Lage et al v. Ocwen Loan Servicing LLC.

Pursuant to Eleventh Circuit Rule 26.1, counsel for Plaintiffs/Appellants John Lage and Maria Mantilla hereby certifies that the Certificates of Interested Persons and Corporate Disclosure Statements filed with Appellants' Initial Brief and the Appellee's Brief are complete, except for the following addition:

1.   Eagle, Ashley R. (Attorney for Appellants)

                                          **By:**   **/s/ Jeffrey Golant**

C-1 of 1

# **TABLE OF CONTENTS**

AMENDED CERTIFICATE OF INTERESTED PERSONS ....................... C-1 of 1

TABLE OF CITATIONS ................................................................................ ii

ARGUMENT .................................................................................................. 1

I. OCWEN FAILS TO DEMONSTRATE THAT THE CFPB "INTENDED" THAT 12 C.F.R. §1024.41(c) WOULD NOT APPLY TO LOSS MITIGATION APPLICATIONS SUBMITTED PRIOR TO THE EFFECTIVE DATE OF THE REGULATION, BUT COMPLETED THEREAFTER ................................................................ 1

 A. Appellants' Loss Mitigation Application Was Not A "Transaction" Within The Contemplation 78 Fed. Reg. 60382-01 ................................................................................................... 1

 B. The CFPB's "Help For Struggling Borrowers" Publication Expressly Disclaims Any Intent to Add Meaning To Regulation X's Plain Language ............................................................... 3

II. OCWEN'S ALTERNATIVE ARGUMENT FOR AFFIRMANCE IS INCONSISTENT WITH THE PLAIN LANGUAGE OF 12 C.F.R. §1024.41(b)(3) .................................................................................. 4

III. OCWEN'S ALTERNATIVE ARGUMENT CONCERNING APPELLANTS' PURPORTED FAILURE TO PROFFER EVIDENCE OF DAMAGES IS INCONSISTENT WITH THE DISTRICT COURT'S FINDINGS AND THE STANDARD OF REVIEW APPLICABLE TO SUMMARY JUDGMENT ............................ 7

CONCLUSION ............................................................................................. 10

CERTIFICATE OF COMPLIANCE ........................................................... 12

CERTIFICATE OF SERVICE ..................................................................... 13

# **TABLE OF CITATIONS**

**Cases**

*Coeur Alaska, Inc. v. Se. Alaska Conservation Council*,
  557 U.S. 261, 129 S. Ct. 2458, 174 L. Ed. 2d 193 (2009) ....................................6

*Tipton v. Bergrohr GMBH-Siegen*,
  965 F.2d 994 (11th Cir. 1992) ................................................................................9

*United States v. Diebold, Inc.*,
  369 U.S. 654, 82 S. Ct. 993, 8 L.Ed.2d 176 (1962)...................................................9

**Regulations**

*12 C.F.R. §1024.41 ................................................................................... 1, 2, 9

12 C.F.R. §1024.41(b)(3)................................................................................ 4, 5, 6

12 C.F.R. §1024.41(c)..................................................................................... 1, 3, 4

78 Fed. Reg. 60382-01 (Oct 1, 2013) .....................................................................1, 3

78 Fed. Reg. 60383 ........................................................................................2

**Other Authorities**

http://files.consumerfinance.gov/f/201312_cfpb_mortgages_help-for-struggling-
  borrowers.pdf..................................................................................................4

\* Primary authorities relied upon

## ARGUMENT

I. **OCWEN FAILS TO DEMONSTRATE THAT THE CFPB "INTENDED" THAT 12 C.F.R. §1024.41(c) WOULD NOT APPLY TO LOSS MITIGATION APPLICATIONS SUBMITTED PRIOR TO THE EFFECTIVE DATE OF THE REGULATION, BUT COMPLETED THEREAFTER**

Appellants stand by their position that the language of 12 C.F.R. §1024.41is unambiguous. Accordingly, the district court erred when it engaged in a statutory construction analysis in order to determine whether the CFPB intended to carve out an unwritten exemption for applications submitted prior to, but completed after, Regulation X's effective date. Nevertheless, while Ocwen urges this Court to adopt the district court's view that CFPB intended to create an exception to the plain language of 12 C.F.R. §1024.41(c), Ocwen has wholly failed to demonstrate that the CFPB had any such intention. As we explain below, both Ocwen and the district court misinterpret the relevant CFPB materials.

    A. **Appellants' Loss Mitigation Application Was Not A "Transaction" Within The Contemplation 78 Fed. Reg. 60382-01**

Like the district court, Ocwen cites language from 78 Fed. Reg. 60382-01 (October 1st, 2013) stating that "the new regulations would *apply to transactions* for which applications were received on or after January 10th, 2014." (Appellee Brief, citing Docket Entry 82, p.18)(Emphasis added). In context, it is clear that the reference to "transactions" refers to the origination of new mortgage loans, not to loss mitigation applications.

1

The loss mitigation provisions of 12 C.F.R. §1024.41 are only one small portion of Regulation X. The final rule that Ocwen and the district court cite however is far broader than even Regulation X which implements the Real Estate Settlement Procedures Act.  As the title of that final rule demonstrates, it also applies Regulation B arising under the Equal Credit Opportunity Act and Regulation Z arising under the Truth In Lending Act.   As the CFPB explains in the final rule that Ocwen cites:

> [i]n the Dodd-Frank Act, Congress established the CFPB and, under sections 1061 and 1100A, generally consolidated the rulemaking authority for Federal consumer financial laws, including the Equal Credit Opportunity Act (ECOA), Truth in Lending Act (TILA), and Real Estate Settlement Procedures Act (RESPA), in the CFPB. At the same time, Congress significantly amended the statutory requirements governing mortgage practices with the intent to restrict the practices that contributed to and exacerbated the crisis.

78 Fed. Reg. 60383

Thus, there is much more discussion in the final rule relating to the origination of new mortgages than to the far more limited issue of loss mitigation for troubled loans that were originated before the Dodd-Frank Act was enacted and the CFPB created. Although it is not defined, the word "transactions" occurs 141 times in the text of the final rule.   Of those, fully 25 are immediately filed by the words "secured by a first lien", "secured by a first or subordinate lien", "secured by a dwelling", or "secured by a "consumer's principal dwelling."  Thus, at least in

2

these 25 examples, it is clear that the word "transaction" refers to the origination of a new mortgage loan. Conversely, Appellants have been unable to locate any example where the word "transactions" is used in connection with the term "loss mitigation" in the text of the final rule.

Ocwen and the district court correctly point out that the final rule does contain a statement indicating that "the new regulations would apply to transactions for which applications were received on or after January 10th, 2014." (Appellee Brief p. 13 citing Docket Entry 82, p.18 quoting 78 Fed. Reg. 60382-01(Oct 1, 2013). But given the broad scope of the final rule, it simply does not follow that this language refers to any distinction between submitted applications and complete applications within the much narrower context of 12 C.F.R. §1024.41(c). This conclusion is buttressed by the fact that 12 C.F.R. §1024.41(c)'s plain language refers only to complete applications, and makes no reference to the date the application was submitted.

### B. The CFPB's "Help For Struggling Borrowers" Publication Expressly Disclaims Any Intent to Add Meaning To Regulation X's Plain Language

As Ocwen points out, the district court cited language in the CFPB's "Help For Struggling Borrowers" publication as persuasive authority that the CFPB did not intend 12 C.F.R. §1024.41(c) to apply to applications that were submitted prior to January 10th, 2014, but completed thereafter. (Appellee Brief, p. 16  n.16).

3

However, page 6 of the CFPB publication plainly states "this guide summarizes certain mortgage rules finalized by the CFPB in 2013, but it is not a substitute for the rules. Only the rules and their official interpretations can provide complete and definitive information regarding their requirements."[1] Accordingly, Appellants respectfully submit that this publication simply does not offer any persuasive authority that the CFPB meant anything different than what the plain language of 12 C.F.R. §1024.41(c) says.  The publication expressly defers to the rule as promulgated.   The plain language of the rule compels a conclusion contrary to the one that the district court reached and that Ocwen advocates here.

## II.    OCWEN'S ALTERNATIVE ARGUMENT FOR AFFIRMANCE IS INCONSISTENT WITH THE PLAIN LANGUAGE OF 12 C.F.R. §1024.41(b)(3)

Ocwen asserts that this Court should affirm the district court's summary judgment on the alternative ground that Appellants' application was submitted less than 37 days before a foreclosure sale *scheduled* for January 29th, 2014. (Appellee Brief, p. 18 – 22). But the scheduled sale that Ocwen refers to never occurred. Importantly, 12 C.F.R §1024.41(b)(3) does not refer to the date that a sale is *scheduled*. To the contrary, it unambiguously states that the date that the sale "*occurs*" is the controlling date.  It is undisputed that the January 29th, 2014 sale

---

[1] Available at http://files.consumerfinance.gov/f/201312_cfpb_mortgages_help-for-struggling-borrowers.pdf   (Last Visited on April 14th, 2016).

4

date that Ocwen relies upon never occurred because the sale was rescheduled for March 14th, 2014. (Appellee Brief, p. 19). Once again, Ocwen's position cannot be reconciled with the plain language of the regulation. Since the regulation's plain language provides that the controlling date is the date the sale "occurs", the date that a sale is scheduled is irrelevant, where, as here, the scheduled sale never "occurs."

>The relevant Regulation X language provides:
>
>> *Determining protections.* To the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale *occurs*, such determination shall be made as of the date a complete loss mitigation application is received.
>
>12 C.F.R. §1024.41(b)(3) (Emphasis added)

Here, as Ocwen correctly points out, Appellants asserted that the application became facially complete on January 27th, 2014, and a foreclosure sale was scheduled to occur on January 29th, 2014, only two dates later. (Appellee Brief, p.21). However, as Ocwen also correctly points out the January 29th, 2014 sale was rescheduled for March 14th, 2014. (Appellee Brief, p.22). The January sale never occurred. The controlling date under the regulation is March 14th, 2014, the date the sale occurred. The sale of Appellants home occurred more than 37 days after January 27th, 2014, the date the application is alleged to have become facially

complete. Thus, Ocwen improperly asks this Court to replace the words "when a foreclosure sale occurs" in 12 C.F.R. §1024.41(b)(3) with the words "when a foreclosure sale is scheduled." The plain and unambiguous language of the regulation requires the Court to decline that invitation.

Ocwen confusingly cites to "Proposed comment 41(B)(3)-2" which refers to the possibility that a rescheduled sale could be rescheduled, and that could affect the timeliness of the application (Appellee Brief, p.20). But that was merely a *proposed* comment. Ocwen cites nothing that indicates that the proposed comment was actually adopted. Moreover, since the plain language of 12 C.F.R. §1024.41(b)(3) provides that the controlling date is the date that the foreclosure sale actually occurs, it would appear to follow that that the proposed comment was *not* adopted. But even if it was, the commentary cannot change the meaning of the promulgated regulation. It is only appropriate for a court to defer to an agency's interpretation of its own regulation where the regulation is itself ambiguous. *See Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 278, 129 S. Ct. 2458, 2469, 174 L. Ed. 2d 193 (2009). The plain language of 12 C.F.R. §1024.41(b)(3) referring to the date that the sale "occurs" is simply not ambiguous.

6

### III. OCWEN'S ALTERNATIVE ARGUMENT CONCERNING APPELLANTS' PURPORTED FAILURE TO PROFFER EVIDENCE OF DAMAGES IS INCONSISTENT WITH THE DISTRICT COURT'S FINDINGS AND THE STANDARD OF REVIEW APPLICABLE TO SUMMARY JUDGMENT

Ocwen cites Appellants' purported failure to provide evidence of emotional distress damages as another alternative basis for this Court to affirm. (Appellee Brief, p. 22). Ocwen goes so far as to assert that Appellants have "waived any challenge to the actual damages determination." (Appellee Brief, p. 23). But as Ocwen inconsistently acknowledges, there was no determination that Appellants *did not* sustain any emotional distress damages. To the contrary, the district court found that they did, noting that "Plaintiffs' emotional suffering was clearly exacerbated by the uncertainty surrounding their loan modification application…. (Appellee Brief p. 23 citing Docket Entry 82, p.36). Appellants plainly could not have waived the right to challenge an aspect of the district court's decision that was not decided adversely to them. Simply put, the district court did not find that Appellants had not sustained emotional distress. Thus, Appellants had no reason to challenge that finding.

Rather, the district court found that Ocwen had no duty to process their loan modification application because it was initially submitted on January 8th, 2014. Thus, in the district court's view, Appellants were not entitled to recover for any damages because there was no breach of a legal duty. Of course, Appellants have

7

challenged that determination in this appeal. The district court did not determine that Appellants had not sustained damages. Far from it, it acknowledged that they did. Ocwen's waiver argument is therefore baseless.

Although it has not filed a cross-appeal, Ocwen now attempts to challenge the district court's conclusions regarding damages. It also seeks to avoid that conclusion by labeling it as "dictum." (Appellee Brief, p. 23). Ocwen has it wrong. The district court did not find that Appellants did not sustain damages as a result of the loss mitigation violation.

Furthermore, even if it were procedurally appropriate, Ocwen's argument would be unavailing under the appropriate summary judgment standard. Ocwen insists that Appellant Maria Mantilla's "…testimony describes generalized stress and frustration from the foreclosure itself…" *Id.* Ocwen then posits that the Court should "…ask whether there is any evidence that Ms. Mantilla's emotional distress would not have occurred but for the timing of Ocwen's consideration of the application. (Appellee Brief at p. 25 n.12). Ocwen similarly asserts that the legal fees that Ms. Mantilla incurred in connection with Ocwen's failure to timely consider the application "…related to an effort to forestall foreclosure…" (Appellee Brief at p. 25 n.11), and therefore apparently unrelated to Ocwen's RESPA violation.

8

Ocwen's "but for" argument is illogical. It is doubtlessly true that Appellants would have sustained emotional distress as a result of the foreclosure even if Ocwen had processed their application in the manner that 12. C.F.R §1024.41 required. It is also obvious that, if the application had been decided in their favor, they would have experienced much less emotional distress because the ordeal would have been shorter and would have had a satisfactory ending. Even if the application were denied, Appellants were entitled to have the sale that actually occurred in March 2014 cancelled and rescheduled after the determination had been made. In opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L.Ed.2d 176 (1962). For purposes of summary judgment, Appellants would be entitled to the reasonable inference that if Ocwen had properly handled their loss mitigation application, they would have avoided the prolonged emotional distress and ultimate loss of their home because they would have received a loan modification. Appellants would also be entitled to the reasonable inference that, if the loss mitigation application were decided on its merits and contrary to their preferred outcome, they would not have expended attorneys' fees and litigation costs attempting to avoid an inevitable foreclosure.

9

In any event, the district court did not grant summary judgment on the basis of the unreasonably favorable factual inferences that Ocwen now asks this Court to draw on appeal.  Ocwen has not filed any cross appeal asserting that the district court should have granted summary judgment on a different basis. The Court should therefore decline Ocwen's request to enter summary judgment in its favor on an entirely different theory as proposed by Ocwen that is at completely at odds with the record evidence.

## **CONCLUSION**

For the reasons described above and in Appellants' Initial Brief, this Court should reverse the summary judgment in favor of Ocwen and remand this matter to the district court.

>Respectfully submitted,
>
>**/s/Jeffrey N. Golant**
>Jeffrey N. Golant Esq.
>Fla. Bar No.: 0707732
>The Law Offices of Jeffrey N. Golant, P.A.
>1999 N. University Drive, Ste. 213
>Coral Springs, FL 33071
>Telephone:  (954) 942-5270
>Facsimile:   (954) 942-5272
>Email: jgolant@jeffreygolantlaw.com

Jessica Lynn Kerr ESQ.
Jessica L.Kerr, P.A.
4000 Hollywood Blvd., Ste. 435 - South
Hollywood, FL 33021
(954) 962-1166
Facsimile (954) 962-1779
Email: service@jmadvocacygroup.com

*Counsel for Appellants John Lage and Maria Mantilla*

## **CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,176 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

**/s/ Jeffrey N. Golant**

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified below by notice of electronic filing generated by CM/ECF.

David R. Fine
K&L Gates, LLP
17 North 2nd Street, Floor 18
Harrisburg, PA 17101-1507
(717) 231-4500

Freddi R. Mack
K&L Gates, LLP
200 South Biscayne Boulevard, Suite 3900
Miami, FL 33131-2370
(305) 539-3375


**/s/ Jeffrey N. Golant**